NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DREAM WITH COLORS, INC., *Plaintiff/Appellant*,

*v.*

ROBERTO SANTOS, et al., *Defendants/Appellees.*

No. 1 CA-CV 25-0828

FILED 07-10-2026

---

Appeal from the Superior Court in Maricopa County
No.  CV2023-014574
The Honorable John L. Blanchard, Judge

**AFFIRMED**

---

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill, Ryan McGill
*Counsel for Plaintiff/Appellant*

Fennemore Craig, PC, Phoenix
By Michael L. Kitchen, Kaitlyn Smith
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Michael J. Brown joined.

---

**P A T O N**, Judge:

**¶1**  Dream With Colors Inc. ("Dream") appeals the superior court's grant of summary judgment against it and in favor of Roberto Santos and R.A.S. Landscaping ("RAS") (collectively "Santos"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**  Because Dream challenges the court's grant of summary judgment against it, we view the facts in the light most favorable to Dream. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).

**¶3**  Dream is a certified H-2A seasonal landscape and agricultural employer in Arizona. The H-2A visa program allows agricultural workers into the United States seasonally so long as the seasonal workers return to their home country after the seasonal job ends. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(i)(2); 20 C.F.R. § 655.135(i)(2). If the seasonal workers overstay their visa, they are unauthorized to work in the United States. 8 C.F.R. § 214.2(h)(5)(viii)(B).

**¶4**  H-2A employer certification requires Dream to pay expenses such as locating and recruiting workers from foreign countries, processing applications, preparing forms for H-2A certifications, and travel and transportation costs. 20 C.F.R. §§ 655.135(j), 655.122(h). As part of the H-2A disclosure, the H-2A workers signed employment agreements that did not include non-compete provisions. Dream alleged it had a "reasonable expectation" that its H-2A workers would return in subsequent years and many workers did indeed return.

**¶5**  Roberto Santos and his business, RAS, had a business relationship with Dream. Over the last decade, at least 10 H-2A workers left Dream and went to work for Santos. One former Dream employee, Ofelia Ramirez, left Dream, married Roberto Santos, and began working for RAS in 2014.

¶6            In March 2023, Dream discovered that some of its former H-2A workers were working for RAS.  Dream also alleged that, in June 2023, one of its H-2A workers, Odilio Melchor, called to resign from Dream while working for RAS.  Dream filed a notice that Melchor abandoned his employment with the Office of Foreign Labor Certification, but RAS denies that Melchor ever worked for it.  Dream did not present any evidence that Melchor ever worked for RAS.

¶7            Dream filed a complaint against Santos in September 2023, seeking a declaratory judgment that Santos's actions "violated [Dream's] rights under the H-2A program."  Dream also alleged that Santos tortiously interfered with Dream's business expectancy and contracts with its H-2A workers.  Dream further sought a preliminary and permanent injunction preventing Santos "from interacting with any H-2A employees at Dream."

¶8            Santos moved for summary judgment in November 2024, arguing that Dream had not presented evidence to support its tortious interference claim and that the statute of limitations barred many of Dream's claims.  Dream responded to the motion for summary judgment by asking the court, under Arizona Rule of Civil Procedure ("Rule") 56(d), to compel the production of personnel files and payroll records that Dream claimed Santos had not produced.  Dream also asked for a court order that Dream could inspect the personnel files and payroll records to ensure Santos produced the requested documents.

¶9            The court granted Dream's request for Rule 56(d) relief and ordered that "Counsel for Plaintiff shall meet and confer with Defendants' counsel and obtain the requested communications, to the extent they exist between the [D]efendants and the identified H-2A workers.  Defense counsel shall produce documents relating to the specific H-2A workers." But the court did not address Dream's request to inspect the personnel files and payroll records.

¶10            Santos provided Dropbox links to personnel files and payroll documents, and the parties provided supplemental briefing on Santos's motion for summary judgment.

¶11            In the meantime, Dream claimed that many of the produced documents were unrelated to the dispute and that the production of documents was "selective" or otherwise incomplete.   Dream also complained that Santos did not allow Dream to inspect the personnel and payroll records at RAS to verify compliance with the court's order.

¶12            Santos insisted that they produced the requested documents and averred that the court's order did not require an onsite inspection of documents.  Unable to resolve these issues without the court, the parties filed a joint statement of discovery dispute regarding Dream's issues with the produced documents and Santos's refusal to allow Dream to inspect the files in person.  The court heard argument on the discovery dispute, and Dream again argued that it should be allowed to personally inspect Santos's files.  Santos disagreed, and noted that Dream identified production by Zip file or Dropbox link as acceptable methods of disclosure, which Santos had used to comply.  The court informed the parties that it would not rule separately on the discovery dispute and instead would resolve it as part of its summary judgment ruling.

¶13            The court granted Santos's motion for summary judgment. The court found that Dream "has no 'legal right' under the H-2A scheme to compel its employees to remain, or to stop other companies from competing or associating with its employees."  The court thus found that Dream did not have a "specific 'business relationship or expectancy' with which [RAS] interfered."  It explained that Dream's general expectation that its workers would return to work "indefinitely" was too speculative to create a recognized business relationship or expectancy.  The court also found that Dream only presented evidence of Santos competing with Dream for employees, not of improper conduct.  The court reasoned that "[c]ompetition is not improper."

¶14            Regarding Santos's statute of limitations defense, the court found that 11 of the 13 workers that allegedly left Dream to work for Santos had stopped working for Dream more than two years before Dream sued Santos.  It thus found that the statute of limitations barred Dream's claims as to those 11 workers.  Dream filed a motion for reconsideration, which the court denied.  Dream timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

## DISCUSSION

I.      **The superior court did not err in granting summary judgment because there is no evidence that Dream had a contractual relationship or business expectancy in its former H-2A workers or that Santos's conduct was improper.**

¶15            Dream argues the superior court improperly granted summary judgment in favor of Santos because it raised disputes of material fact regarding the essential elements of its tortious interference claims.

4

**¶16** We review the superior court's "grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered." *McAlister v. Loeb & Loeb, LLP*, ___ Ariz. ___, ¶ 21, 571 P.3d 891, 897 (2025) (citation omitted). Summary judgment is proper when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *McAlister*, 571 P.3d at 897, ¶ 21 (citation omitted). We "may affirm the trial court's ruling if it is correct for any reason apparent in the record." *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

**¶17** To establish a claim for tortious interference, Dream must show: "(1) [the] existence of a valid contractual relationship [or business expectancy], (2) knowledge of the relationship on the part of [Santos], (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that [Santos] acted improperly." *Wells Fargo Bank*, 201 Ariz. at 482, ¶ 74; *Dube v. Likins*, 216 Ariz. 406, 412-13, ¶ 14 (App. 2007).

### A. Dream did not have a valid contractual relationship or business expectancy with its former H-2A workers.

**¶18** Dream broadly argues that it had "contractual and business relationships with its H-2A workforce," with which Santos interfered. Dream claims the United States Department of Labor prohibits the "poaching" of H-2A workers, impliedly arguing that participation in the H-2A program itself creates a business expectancy that H-2A workers will return to that employer year over year. Dream also contends Santos interfered with the financial investment Dream makes to bring workers to the United States and to maintain its status as a certified H-2A employer.

**¶19** To survive summary judgment on its tortious interference claims, Dream must show evidence of "a valid contractual relationship or business expectancy." *Dube*, 216 Ariz. at 411, ¶ 8 (citation omitted).

**¶20** We first note that the United States Department of Labor does not prohibit the "poaching" of H-2A workers as Dream contends. Dream relies on 29 United States Code ("U.S.C.") Section 1842 and 20 Code of Federal Regulations Section 655.122. But 29 U.S.C. Section 1842 does not

mention H-2A workers or provide any bar on a third party employing an individual who previously worked for another H-2A employer. Instead, it bars a person from "utiliz[ing] the services of any farm labor contractor to supply any migrant or seasonal agricultural worker" without confirming that the contractor holds a valid certificate of registration. 29 U.S.C. § 1842. And Title 29 explicitly excludes H-2A workers from the definition of "migrant agricultural worker[s]" or "seasonal agricultural worker[s]." 29 U.S.C. § 1802(8)(B)(ii), (10)(B)(iii); 29 C.F.R. § 500.20(p)(1)(ii). This statute does not prohibit "poaching" even current, much less former, H-2A workers.

**¶21**        The federal regulations Dream cites are similarly ineffective in establishing an expectancy that Dream's H-2A workers would return to Dream after the term of their H-2A visa expires. They refer to the benefits Dream must provide to H-2A workers. 20 C.F.R. § 655.122. These regulations support Dream's contention that Dream incurs costs to support its H-2A workforce but contain no provisions that create an expectation that these seasonal workers will return to the same H-2A employer year after year.

**¶22**        A worker's status as an H-2A worker does not on its own create a protected business expectancy that the worker will indefinitely work for the employer. The H-2A visa program is, by definition, temporary and seasonal. Not only that, but Dream's former H-2A workers that Santos allegedly poached were at-will employees and did not sign non-compete agreements.

**¶23**        Whether Dream has a valid contract or business expectancy that its H-2A workers would work for Dream for the full term of the visa is an issue we need not reach. In its complaint, Dream alleged only one of its employees, Melchor, abandoned his employment with Dream to work for RAS. Although there is evidence that Melchor abandoned his employment with Dream, there is no evidence in the record that Melchor ever worked for RAS.

**¶24**        Regarding the former H-2A workers at issue here, the only evidence in the record is that Dream had a general "expectation" that its H-2A workers would return in the following years and that many of its past employees have chosen to do so. This is too speculative to create a valid contractual relationship or business expectancy between Dream and its former H-2A workers. *See Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 33 (App. 2005) (holding that there is an elevated "need for caution" in finding liability for tortious interference when there is only an expectation that

customers "would return from year to year" (citation omitted)). The superior court thus did not err in finding the same.

### B. Even assuming a valid contractual relationship or business expectancy, there is no evidence that Santos interfered with that relationship or expectancy through improper motive or means.

¶25 The interference with a contractual relationship or business expectancy must be "improper as to motive or means" before liability will attach. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 388 (1985), *superseded by statute on other grounds*, Employment Protection Act, 1996 Ariz. Sess. Laws, ch. 140, § 3. And whether an action is improper depends on the analysis of seven factors: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Id.* at 387.

¶26 Dream focuses on factor (e) and argues that Santos's conduct was improper because "poaching workers from a federal work program is unlawful" and harms Dream's business. Dream argues it presented evidence sufficient to create a dispute of fact as to whether public policy favored freedom of action by Dream's former H-2A workers because "RAS induced workers to abandon H-2A status in favor of a misclassification scheme that exploited the targeted workers and improperly interfered with [Dream's] H-2A investment." Dream argues that this circumvention of the public policy of the H-2A program created a dispute of fact that should have been resolved by a jury. We disagree.

¶27 As explained above, it is not unlawful for a third party to recruit and hire a former H-2A worker. *Supra* ¶¶ 20-22. We also see no evidence that Santos "induced workers to abandon their H-2A status." All the evidence shows is that the identified workers formerly worked for Dream and now work for Santos.

¶28 We are also unpersuaded by Dream's argument that Santos's "misclassification" of workers as independent contractors rather than employees makes Santos's hiring of the former H-2A workers improper. Whether Santos's misclassification of the workers under its employ is unlawful is irrelevant to the actual issue, which is whether Santos's improper conduct *caused* Dream's former H-2A workers not to return to

Dream. *See Miller*, 209 Ariz. at 471-72, ¶¶ 32-33. There is no evidence in the record that Santos's allegedly unlawful "misclassification scheme" is what caused Dream's former H-2A workers not to return to Dream.

**¶29** Dream points to evidence that Santos tried to hire Dream's office manager by offering her higher pay as evidence of Santos's improper conduct. But it is not improper to compete for workers by providing higher pay and benefits. *See id.* at 471, ¶ 32 (interference with a contract is not improper if the competitor's "purpose at least in part is to advance his own economic interests").

**II.** **The superior court did not abuse its discretion by refusing Dream's request to inspect Santos's payroll and employment documents in person, even if it did not explicitly explain its reasoning.**

**¶30** Dream argues the court abused its discretion by refusing to explicitly rule on its request to inspect Santos's payroll employment documents in person. We review the court's handling of discovery disputes for an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). If the party opposing a motion for summary judgment "cannot present evidence essential to justify its opposition, it may file a request for relief and expedited hearing." Ariz. R. Civ. P. 56(d)(1). But the superior court need not rule on a motion for additional discovery before ruling on a dispositive motion if the additional information sought would "ha[ve] no bearing on that issue and would have only delayed the inevitable result." *Ader v. Est. of Felger*, 240 Ariz. 32, 36, ¶ 7 (App. 2016).

**¶31** Dream admitted during a hearing on the discovery dispute that RAS produced employment records, payroll records, and other documents consistent with the court's grant of Dream's initial request for Rule 56(d) relief. But Dream insists that these documents are "selective" or otherwise incomplete and that the missing documents would show that RAS poached Dream's employees and is illegally avoiding paying employment taxes.

**¶32** But even accepting Dream's conclusion that the allegedly missing documents could show tax evasion or poaching is true, neither of those facts would have affected the court's analysis. In fact, the court explicitly considered this in its ruling when it explained that "even if [Dream] did have evidence of [RAS's] solicitation, [Dream] has no evidence that the solicitation was unlawful or otherwise improper." Because the allegedly withheld documents would not have been material to the court's

decision, the court did not abuse its discretion by implicitly denying Dream's request to conduct an onsite inspection of RAS's records. *See Ader*, 240 Ariz. at 36, ¶ 7.

**¶33**      Because we affirm the grant of summary judgment based on Dream's failure to produce evidence establishing the elements of its tortious interference claim, we need not address Dream's argument that the court erred in finding that some of its claims were barred by the statute of limitations.

**¶34**      Santos requests attorneys' fees pursuant to Section 12-341.01. We deny this request because this suit did not arise out of contract. As the successful party on appeal, we grant Santos and RAS their taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶35**      We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR